**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>QBE SPECIALTY INSURANCE COMPANY, a North Dakota corporation,<br><br>Defendant. | Case No. 19-cv-05947-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 30] |

This suit arises from a dispute between two insurers, Plaintiff Lexington Insurance Company ("Lexington") and Defendant QBE Specialty Insurance Company ("QBE"), following litigation of a construction defect action against their mutual insured, Cell-Crete Corporation ("Cell-Crete"). Cell-Crete tendered the underlying action to Lexington, which accepted Cell-Crete's defense and ultimately settled on Cell-Crete's behalf. Cell-Crete did not tender the underlying action to QBE, but rather expressly advised QBE that it had elected to tender only to Lexington and did not wish QBE's participation.

More than two years after settlement and dismissal of the underlying action, Lexington filed the current suit against QBE, asserting claims for declaratory relief and equitable contribution. Both claims are grounded in Lexington's assertion that QBE should pay a portion of the defense and indemnity costs incurred by Lexington on behalf of their mutual insured, Cell-Crete. QBE seeks summary judgment, arguing that Lexington's claims are barred by the two-year

1  statute of limitations under California Code of Civil Procedure § 339 and by the selective tender
2  rule. In opposition, Lexington argues that its claims are not time-barred and that California does
3  not recognize the selective tender rule.

4      QBE's motion for summary judgment is GRANTED for the reasons discussed below.

## I. FACTUAL BACKGROUND

Cell-Crete served as the concrete subcontractor during construction of the One Pearl Place apartment complex in San Jose, California ("the Project"). The Project owner filed the underlying construction defect action in 2013. *See* Brault Decl. ¶ 3, ECF 34. The operative third amended complaint alleged that although work on the Project was completed in 2004, the construction defects were not discovered until 2012. *See* Def.'s RJN Exh. A (Third Am'd Compl.) ¶¶ 45-47, ECF 31. The Project owner asserted claims against multiple defendants, including Cell-Crete. *See id.* ¶ 9.

Both Lexington and QBE issued commercial general liability ("CGL") policies to Cell-Crete that potentially were implicated by the underlying action. Lexington issued seven CGL policies to Cell-Crete that, collectively, were effective from October 1, 2003 to October 1, 2010. *See* Yaron Decl. Exh. A 3:6-18, ECF 32-1. Lexington took the position that coverage for the underlying action was available only under the earliest policy, effective from October 1, 2003 to October 1, 2004 ("Lexington Policy"). *See* Brandt Decl. ¶¶ 4-5, ECF 39. According to Lexington, coverage was not available under the six subsequent policies due to an amended definition of "occurrence" in those policies. *See id.* ¶ 4. QBE issued a CGL policy to Cell-Crete that was effective from from January 25, 2011 to October 1, 2011 ("QBE Policy"). *See* Amirata Decl. ¶ 4 & Exh. A, ECF 33.

Cell-Crete tendered the underlying action to Lexington. *See* Brault Decl. ¶¶ 4-5. Lexington accepted the defense and appointed the law firm of Ryan & Lifter to act as Cell-Crete's defense counsel in the underlying action. *See id.* ¶ 5; Yaron Decl. Exh. A 3:6-17. Cell-Crete did not tender the underlying action to QBE. *See* Brault Decl. ¶¶ 7-9. Cell-Crete preferred to seek coverage only under the Lexington Policy, thus preserving policy limits on the later QBE Policy for any future claims or lawsuits. *See id.* ¶ 10. In addition, Cell-Crete did not want to incur a

1  deductible from QBE.  *See id.* ¶ 11.

2        Cell-Crete advised QBE of its preference in a letter dated May 20, 2015 from Cell-Crete

3  Controller Roland DeBelen to QBE Senior Claims Technical Specialist Kelly Krull.  *See* Brault

4  Decl. Exh. A.  The letter stated as follows:

> It has come to our attention that Lexington is tendering all claims to QBE to participate in the indemnity and defense of Cell-Crete.  Please be advised Cell-Crete made an Armstrong election and has tendered all the pending claims to the oldest available Lexington policies.  Therefore, Cell-Crete is not requesting nor does not want QBE or its policies to participate in the defense or indemnity of any claims involving Cell-Crete or any other named insured on the QBE policy.

9  Brault Decl. Exh. A.

10        On October 9, 2015, Lexington's authorized claims representative, AIG Claims, Inc.

11  ("AIG"), wrote a letter to QBE advising that QBE "may owe a duty to our mutual insured to

12  defend this pending lawsuit."  Brandt Decl. Exh. D.  Apparently, that tender letter went astray, and

13  AIG sent QBE a copy of it via email dated February 22, 2016.  *See* Amirata Decl. Exh. C.  QBE

14  responded by email dated February 23, 2016, stating that because Cell-Crete had made an

15  "Armstrong election" to tender its defense only to Lexington, QBE would not participate in the

16  defense or indemnity of the underlying action.  *See id.*

17        On March 3, 2016, QBE's Kelly Krull emailed Cell-Crete's counsel to confirm that Cell-

18  Crete had elected to tender the underlying action only to Lexington and that Cell-Crete did not

19  want QBE to participate in the defense and indemnity of the underlying action.  *See* Brault Decl. ¶

20  8.  Cell-Crete's counsel responded by email on the same date, advising: "You are correct that

21  Cell-Crete has made an *Armstrong* election and is not asking QBE to participate in Cell-Crete's

22  defense in this action."  *Id.* Exh. B.  However, Cell-Crete's counsel advised that "Cell-Crete takes

23  no position and will not assume any responsibility or liability with regard to any remedies that

24  AIG/Lexington might seek from/recover against QBE."  *Id.*

25        AIG requested that QBE participate in a mandatory settlement conference set for

26  September 1, 2016 in the underlying action.  *See* Agnost Decl. Exh. D, ECF 38.  AIG explained

27  that Lexington was prepared to offer policy limits to settle the underlying action, but that the

28  Lexington Policy would not satisfy the demand of $1,850,000 against Cell-Crete.  *See id.*  AIG

stated that if Cell-Crete was going to settle, QBE likely would have to contribute. *See id.* QBE declined to participate, stating that it would abide by the direction it had received from Cell-Crete. *See id.*

On June 2, 2017, Lexington paid $400,000 to settle the underlying action on behalf of Cell-Crete. *See* Yaron Decl. Exh. B 2:2-3, ECF 32. On August 15, 2017, Cell-Crete was dismissed from the underlying action with prejudice. *See* Def.'s RJN Exh. B, ECF 31. On September 8, 2017, the law firm of Ryan & Lifter issued its final invoice to Lexington. *See* Yaron Decl. ¶ 6 & Exh. E. On September 30, 2017, Lexington issued a check in the amount of $184.59 to the law firm of Ryan & Lifter, in final payment of Cell-Crete's defense expenses in the underlying action. *See* Agnost Decl. ¶¶ 9-10 & Exhs. G-H, ECF 38. Lexington claims that it incurred approximately $667,223.52 in defense expenses in the underlying action. Compl. ¶ 1, ECF 1.

After dismissal of the underlying action, Lexington made several requests to QBE for contribution of defense and indemnity expenses. *See* Brandt Decl. ¶¶ 7-8. By letter dated October 18, 2017, Lexington requested reimbursement from QBE in the amount of $470,143.77. *See id.* ¶ 7 & Exh. E. Lexington repeated that request in a letter dated December 14, 2017. *See id.* ¶ 8 & Exh. F. The December 2017 letter included a draft complaint for declaratory relief and equitable contribution. *See id.* However, Lexington waited until September 24, 2019 to file the present suit. *See* Compl., ECF 1. Lexington alleges claims for declaratory relief and equitable contribution, seeking "recovery of QBE's equitable share of approximately $667,223.52 in defense expenses and $400,000 in damages that Lexington paid on Cell-Crete's behalf." *Id.* ¶ 1.

QBE answered the complaint on October 14, 2019, asserting among other affirmative defenses that Lexington's claims are barred by the two-year statute of limitations under California Code of Civil Procedure § 339, and by Cell-Crete's "Armstrong election." *See* Answer, ECF 11. QBE now seeks summary judgment on those grounds.

**II.   LEGAL STANDARD**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of*

4

*Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (quotation marks and citation omitted).

### III. DISCUSSION

The complaint contains two claims, Claim 1 for declaratory relief and Claim 2 for equitable contribution. QBE argues that it is entitled to summary judgment because both claims are time-barred. In addition, QBE contends that the equitable contribution claim is barred by Cell-Crete's "Armstrong election." Finally, QBE argues that the declaratory relief claim is wholly derivative of the equitable contribution claim and therefore fails with it. In opposition, Lexington asserts that its claims are not time-barred and that Cell-Crete's asserted "Armstrong election" does not constitute a bar to the claim for equitable relief.

#### A. Statute of Limitations

Under California law, a claim for equitable contribution in the insurance context is governed by the two-year statute of limitations under California Code of Civil Procedure § 339. *See Century Indem. Co. v. Superior Court*, 50 Cal. App. 4th 1115, 1124 (1996); *see also Am. States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 202 Cal. App. 4th 692, 700 (2011) ("We agree with the reasoning of the court in *Century Indemnity* and hold the timeliness of ASIC's claim for equitable contribution is governed by section 339, subdivision 1."). Moreover, "[a] cause of action for declaratory relief is derivative of the underlying obligation, and the statute of limitations is determined by the nature of the underlying obligation sought to be adjudicated." *BASF Corp. v.*

*Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1122 (E.D. Cal. 2019) (quotation marks and citation omitted). Under these authorities, a two-year limitations period applies to both Claim 1 for declaratory relief, which is premised on the claim for equitable contribution, and Claim 2 for equitable contribution. The parties agree that both claims are governed by a two-year limitations period. They dispute whether that two-year period elapsed before Lexington filed this suit.

In *Underwriters*, the California Court of Appeal acknowledged the lack of case authority addressing accrual and tolling when one insurer sues another for equitable contribution. *See Underwriters of Interest Subscribing to Policy No. A15274001 v. ProBuilders Specialty Ins. Co.*, 241 Cal. App. 4th 721, 735 (2015). The *Underwriters* court analogized a contribution suit between insurers to an insured's action against its insurer to recover the costs of defense when the insurer breached its obligation to provide a defense. *See id.* Relying on the California Supreme Court's discussion of the latter scenario in *Lambert*, the *Underwriters* court noted that "'the limitation period for an action . . . for failure to defend accrues when the insurer refuses the insured's tender of defense, but is tolled until the underlying action is terminated by final judgment.'" *Id.* (quoting *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal.3d 1072, 1080 (1991)). The *Underwriters* court determined that "the same equitable tolling rules applied in *Lambert* can, and should, be applied to the analogous context of an action by a plaintiff insurer seeking equitable contribution from a nonparticipating insurer." *Underwriters*, 241 Cal. App. 4th at 736. Thus, in *Underwriters* the court framed its holding on statute of limitations as follows: "We hold the limitation period for a contribution action accrues when the noncontributing insurer first refuses the demand to contribute, but that the two-year statute of limitations is *tolled until all of the defense obligations in the underlying action are terminated by final judgment in the underlying action.*" *Id.* (emphasis added).

Applying this holding to the present case, QBE argues that Lexington's claims are time-barred. There is no dispute that Cell-Crete was dismissed from the underlying action with prejudice on August 15, 2017. *See* Def.'s RJN Exh. B, ECF 31. "A dismissal of an action with prejudice is a final decision of the action and has the effect of terminating it and the rights of the

6

1  parties are affected by it and in effect it is a final judgment in favor of defendants." *Fisher v. Eckert*, 94 Cal. App. 2d 890, 894 (1949); *see also Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010) (holding that for *res judicata* purposes, "a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action"). Lexington did not file the present contribution suit against QBE until September 24, 2019, more than two years after Cell-Crete's dismissal from the underlying action. *See* Compl., ECF 1.

Based on the holding of *Underwriters* set forth above, and the undisputed record evidence, it appears that the present suit is time-barred. Lexington argues that this is not so, however, because under its view of *Underwriters* the statute of limitations is tolled in an equitable contribution case until *either* entry of final judgment in the underlying action *or* the date of the last underlying payment for which the plaintiff insurer seeks contribution, whichever is later. Lexington points to evidence that it issued a check in the amount of $184.59 to the law firm of Ryan & Lifter on September 30, 2017, in final payment of Cell-Crete's defense expenses in the underlying action. *See* Agnost Decl. ¶¶ 9-10 & Exhs. G-H, ECF 38. According to Lexington, the statute of limitations on its equitable contribution claim should be tolled through the date of that final payment. If the Court were to find that tolling extends through September 30, 2017, the present action filed on September 24, 2019 would be timely.

Lexington urges the Court to take this approach based on language in the *Underwriters* decision. The Court of Appeal observed in that case that "Underwriters's action was filed *less* than two years after the insurers contributed their payments to fund that settlement, and *less* than two years after the necessary settlement agreements by the numerous parties to the Aceves action were signed and the Aceves suit was finally dismissed as to Pacific Trades, and *less* than two years after Underwriters's final payment to the defense counsel hired to represent Pacific Trades." *Underwriters*, 241 Cal. App. 4th at 735. The Court of Appeal went on to state, "we are persuaded by analogous authority that, although an action for equitable contribution can *accrue* when the noncontributing insurer first refuses to participate in the defense of a common insured, the statute of limitations should be equitably *tolled* until the plaintiff insurer makes the last payment in the underlying suit for which the plaintiff insurer is seeking contribution." *Id*.

7

1    This Court agrees that the quoted language does offer some support to Lexington's
2    position. However, the language in question is not part of the holding of *Underwriters*.
3    Importantly, the Court of Appeal expressly identified its holding with the words "we hold," and
4    nothing after that phrase suggests that equitable tolling may extend beyond the date of final
5    judgment in the underlying action. *See Underwriters*, 241 Cal. App. 4th at 736. Moreover, in
6    *Underwriters* the date of the last payment of defense costs was irrelevant to the statute of
7    limitations inquiry, because the equitable contribution claim was filed less than two years after
8    final dismissal of the insured, Pacific Trades, from the underlying action. *See id.* at 735. The
9    language regarding the date of the last payment therefore appears to be *dicta*.

10   Lexington has not cited a single California case, or federal case applying California law, in
11   which equitable tolling of the two-year period was extended beyond the entry of judgment in the
12   underlying action. Lexington's reliance on *Travelers* is misplaced. *See The Travelers Indem. Co.*
13   *v. The Hanover Ins. Co.*, No. CV 20-3513 PA (PLAX), 2020 WL 4529892 (C.D. Cal. July 30,
14   2020). In that case, the plaintiff insurer, Travelers, made its final payment for defense costs in
15   September 2016, and the underlying action was dismissed on October 25, 2016. *See id.* at *4.
16   Travelers filed a suit for equitable contribution against another insurer more than two years later,
17   on April 16, 2020. *See id.* at *5. The district court held that, "Because Travelers' equitable
18   contribution claim against Hanover accrued no later than October 25, 2016, but Travelers did not
19   commence this action until April 16, 2020, it is barred by California's two-year statute of
20   limitations." *Id*. The *Travelers* decision did include a parenthetical reference to the "last
21   payment" language in *Underwriters*, but that reference was not relevant to the *Travelers* holding,
22   which turned on the district court's finding that the equitable contribution suit was filed more than
23   two years after dismissal of the underlying action. *See id.* at 4-5. Absent some persuasive
24   authority that tolling in equitable contribution cases may extend beyond the date of judgment or
25   dismissal in the underlying action, this Court is reluctant to extend California law in the manner
26   urged by Lexington.

27   At the hearing, Lexington argued that its position is supported by *Fireman's Fund Ins. Co.*
28   *v. Sparks Constr., Inc.*, 114 Cal. App. 4th 1135 (2004). *Fireman's Fund* is referenced once in

8

Lexington's opposition brief, as part of a string citation offered to support Lexington's assertion that "[u]nder the reasoning of *Underwriters*, 241 Cal.App.4th 721, and *Travelers*, 2020 WL 2529892," the date that Lexington payed the final invoice from Ryan & Lifter "is the date on which Lexington's equitable contribution claim *accrued*." Opp. at 12 (emphasis added), ECF 37. Lexington's argument conflates the concepts of accrual and tolling. Both *Underwriters* and *Travelers* make clear that a claim for equitable contribution *accrues* "when the noncontributing insurer first refuses to participate in the defense of a common insured." *Underwriters*, 241 Cal. App. 4th at 735; *see also Travelers*, 2020 WL 2529892, at *4 (quoting *Underwriters*). The undisputed evidence shows that QBE refused Lexington's requests to participate in Cell-Crete's defense in February 23, 2016 and September 2016, more than two years before Lexington filed the present suit for equitable contribution. The accrual date of Lexington's equitable contribution claim therefore is not at issue. The question before the Court is whether the two-year limitations period was equitably *tolled* beyond the date of Cell-Crete's dismissal. The cited portion of *Fireman's Fund* addresses accrual of a claim for equitable contribution, not equitable tolling of the limitations period, and therefore the case offers no support for Lexington's position here. *See Fireman's Fund*, 114 Cal. App. 4th at 1151.

Lexington argues that tolling through September 30, 2017, the date of its last payment to defense counsel in the underlying action, is warranted under traditional tolling principles. Citing a case from the District of Connecticut for tolling requirements under California law, Lexington asserts that "for equitable tolling to be invoked a plaintiff must show three elements: timely notice, lack of prejudice to the defendants, and reasonable and good faith conduct by the plaintiff." *First State Ins. Co. v. Ferguson Enterprises, Inc.*, No. 3:16-CV-1822 (VAB), 2018 WL 4688299, at *16 (D. Conn. Sept. 28, 2018). The Connecticut court accurately summarized the test for tolling under California law. *See Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020) (listing elements required for equitable tolling). "The logic for those requirements is that equitable tolling should be rarely invoked, but done so in order to foster the policy of the law of California which favors avoiding forfeitures and allowing good faith litigants their day in court." *First State*, 2018 WL 4688299, at *16 (quotation marks, citation, and

9

alterations omitted). The Connecticut court saw "nothing in the *Underwriters* case . . . to suggest that these threshold requirements for equitable tolling do not apply to equitable contribution claims." *Id*.

Even assuming that satisfaction of the above elements could give rise to equitable tolling in insurance contribution suits outside the context discussed in *Underwriters*, the Court concludes that no reasonable trier of fact could find that equitable tolling is warranted on this record. With respect to the first element, notice, the record is clear that Lexington gave QBE timely notice of its claim for equitable contribution during the pendency of the underlying action and after it settled. *See* Brandt Decl. ¶¶ 7-8 & Exh. D; Amirata Decl. Exh. C; Agnost Decl. Exh. D. With respect to the second element, prejudice, there is no indication on this record that QBE would be prejudiced if Lexington were permitted to litigate its equitable contribution claim on the merits. However, Lexington has offered no evidence on the third element, reasonable and good faith conduct by the plaintiff. Lexington offers no explanation why it waited so long to file the present suit. Lexington easily could have filed suit after Cell-Crete was dismissed from the underlying action in 2017. In fact, Lexington's December 2017 letter request to QBE seeking contribution included a draft complaint against QBE for declaratory relief and equitable contribution. *See* Brandt Decl. ¶8 & Exh. F. However, Lexington chose to wait almost two years to file suit on those claims. *See* Compl., ECF 1. An internal AIG email dated October 13, 2017 reveals that AIG and Lexington believed – incorrectly in the view of this Court – that Lexington had "2 years after the last payment is made in the claim to file lawsuit against QBE for seeking contribution." Yaron Decl. ¶ 7 & Exh. F. Lexington then waited 23 months to file the present suit just a few days shy of when Lexington believed the statute of limitations would expire. No reasonable finder of fact could view Lexington's conduct to be reasonable and in good faith based on the record evidence.

The Court concludes that QBE has satisfied its burden on summary judgment by establishing that both of Lexington's claims are barred by the applicable two-year statute of limitations. Lexington has not identified facts demonstrating the existence of genuine issues for trial. *See In re Oracle*, 627 F.3d at 387. Even viewing the record evidence in the light most favorable to Lexington, and drawing all reasonable inferences in Lexington's favor, the Court

concludes that this record taken as a whole could not lead a rational trier of fact to find for Lexington. *See City of Pomona*, 750 F.3d at 1049. Accordingly, QBE's motion for summary judgment is GRANTED as to both Claim 1 and Claim 2 on statute of limitations grounds.

### B.     Armstrong Election

QBE also seeks summary judgment on the basis that Lexington's claim for equitable contribution is barred by Cell-Crete's "Armstrong election," that is, Cell-Crete's selective tender of the underlying action only to Lexington and not to QBE. Lexington contends that California does not recognize the selective tender rule.

"Equitable contribution is the right to recover from a co-obligor who shares a liability with the party seeking contribution." *Underwriters*, 241 Cal. App. 4th at 728 (quotation marks and citation omitted). "The right to seek equitable contribution is predicated on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, *the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant*, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." *Id*. (emphasis added).

Despite these principles, some jurisdiction have recognized a "selective tender" rule, which bars "a participating insurer from seeking contribution from a nonparticipating insurer based solely on whether the insured elected to tender to the nonparticipating insurer." *Am. States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 202 Cal. App. 4th 692, 706 n.8 (2011). "The selective tender rule has had little traction outside of Illinois." *Id*. (quotation marks and citation omitted). At least one California court has observed that "the rule appears inconsistent with California law that the right to equitable contribution exists independently of the rights of the insured." *Id*. QBE nonetheless cites numerous decisions from other jurisdictions that endorse the selective tender rule, and it urges this Court to adopt such a rule here. *See* Mot. at 15-16, ECF 30.

Based on its review of California case law, this Court would be extremely reluctant to apply the selective tender rule in this case. However, the Court need not decide whether application of such a rule is warranted, because QBE has demonstrated its entitlement to summary

11

judgment on statute of limitations grounds.  The Court therefore need not and does not reach the merits of QBE's arguments on selective tender.

**IV.  ORDER**

    (1)    QBE's motion for summary judgment is GRANTED;

    (2)    The Clerk shall enter judgment for QBE and against Lexington concurrently with this order; and

    (3)    This order terminates ECF 30.

Dated:  February 25, 2021

_____
BETH LABSON FREEMAN
United States District Judge